**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| BRITTANY HEFFNER, | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * Civil No. 25-3634-BAH |
| HOMEBODY INSURANCE AGENCY, LLC, ET AL., | * |
| Defendants. | * |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OPINION

Plaintiff Brittany Heffner ("Plaintiff"), on behalf of herself and all others similarly situated, brought this putative class action suit in the Circuit Court for Baltimore City against Homebody Insurance Agency, LLC ("Homebody") and WP&M Real Estate Group, LLC ("WP&M") (together, "Defendants") alleging violations of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 et seq.; Section 8-208 of the Real Property Article of the Maryland Code; the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Comm. L. § 13-301 et seq.; and the Maryland Credit Services Businesses Act ("MCSBA"), Md. Code Ann., Comm. L. § 14-1901, et seq. ECF 9 (state court complaint). Defendants removed the action to federal court. ECF 1. Pending before the Court are WP&M's motion to dismiss, ECF 16, and Homebody's motion to compel arbitration, ECF 17. Plaintiff opposes both motions. ECF 20 (opposition to Homebody's motion to compel arbitration); ECF 21 (opposition to WP&M's motion to dismiss). WP&M and Homebody each filed their respective replies. ECF 22 (WP&M's); ECF 23 (Homebody's). All

filings include memoranda of law, and several filings include exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, Homebody's motion to compel arbitration is **DENIED**, and WP&M's motion to dismiss is **GRANTED**.

## I.    BACKGROUND

In November of 2024, Plaintiff "entered into a residential lease agreement . . . with WP[&]M for an apartment at the Twin Ridge Apartments" in Baltimore, Maryland. ECF 9, at 4 ¶ 16; ECF 17-4 (copy of lease agreement with addenda), at 2. "During the lease execution process, WP[&]M's agents presented a document entitled 'Homebody Rent Reporting Lease Addendum.'" ECF 9, at 4 ¶ 17. This addendum provides that "Homebody Rent Reporting is an amenity provided by the property for which all Residents are automatically enrolled." *Id.* at 5; ECF 17-4, at 21.[2] The rent reporting service "is a credit reporting and financial tool provided by Homebody Insurance Agency, LLC and its affiliate Simplified Business Group, LLC," which involves "report[ing a] Resident's rent and/or utility payments . . . to one or more consumer reporting agencies (e.g., Equifax, TransUnion, and/or Experian)." ECF 9, at 5; ECF 17-4, at 21. Plaintiff had "one month to opt out of the service without incurring any cost" should she "decide not to continue with the Homebody Rent Reporting Service." ECF 9, at 5; ECF 17-4, at 21. After one free month of rent reporting services, the cost of the rent reporting service was $8.95 per month. ECF 9, at 5; ECF 17-4, at 21.

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[2] Plaintiff provides a clipped screenshot of the lease addendum in the complaint. ECF 9, at 5. Homebody includes with its motion to compel arbitration a copy of the entire lease agreement with the rent reporting addendum. *See* ECF 17-4.

The lease addendum provides that "[b]y signing below, or electronically accepting through your landlord, Resident is enrolling in Rent Reporting and agrees to the terms and conditions set forth in this addendum and the Rent Reporting terms of use that can be found at homebody.com/legal/terms-conditions." *Id.* at 5; ECF 17-4, at 21. The hyperlink is in blue font, and Plaintiff's electronic signature appears at the bottom of the page of the addendum. ECF 17-4, at 21; *see also id.* at 24 (reflecting Plaintiff's electronic signature of the rent reporting addendum); ECF 20-1, at 1 ¶ 5 (averring that Plaintiff "signed or electronically accepted the Addendum as part of the lease process"). After Plaintiff signed her WP&M apartment lease, she "incurred and paid the monthly $8.95 fee." ECF 9, at 5 ¶ 19.

If a user clicked the link provided in the lease addendum, they were taken to a page titled "Homebody Terms." ECF 17-3 (Homebody terms of use), at 2; ECF 17-2 (declaration of Jamis Gardner, Chief Legal Counsel for Homebody), at 2 ¶ 4 (providing that ECF 17-3 is a true and correct copy of the terms of use during the relevant time period); ECF 9, at 6 ¶ 23 ("The addendum incorporates Homebody's Terms and Conditions by reference. These Terms are posted online, not attached to the lease documents."). The first paragraph of the Homebody Terms page provides that by "availing itself of the services offered herein . . . User accepts these terms and conditions of use, including all product terms and conditions . . . ." ECF 17-3, at 2. The Homebody Terms also include a modification provision, which states:

> Homebody reserves the right to change or modify any of the Terms contained herein . . . at any time and in its sole discretion. Any changes or modifications will be effective immediately upon posting of the revisions on the Site. User's continued use of the Site following the posting of such changes or modifications will constitute acceptance of such changes or modifications.

*Id.*

Paragraph 16 of the Site Terms of Use, titled "General Legal Notices," contains arbitration language as follows:

> Any controversy or claim arising out of or relating to the Site, Services or these Terms must be commenced within one year after the claim arose and will be settled by binding arbitration in accordance with the commercial arbitration rules of the American Arbitration Association. Any such controversy or claim will be arbitrated on an individual basis and will not be consolidated in any arbitration with any claim or controversy of any other party. The arbitration will be conducted in Salt Lake City, Utah, and judgment on the arbitration award may be entered into any court of competition jurisdiction.

*Id.* at 5.

According to Plaintiff, "Defendants sell the [rent reporting] program as a way to 'build credit.'" ECF 9, at 7 ¶ 27. Plaintiff also opines that "credit reporting based on rental data often contain[s] inaccuracies, can misrepresent tenants' creditworthiness, and create[s] lasting harm." *Id.* at 8 ¶ 30. Plaintiff contends that tenants are then "left with monthly charges they did not meaningfully consent to, promised a credit benefit that often never comes, exposed to the risk of adverse reporting, and stripped of their rights through illegal arbitration clauses." *Id.* at 9 ¶ 37.

Plaintiff brings four claims in connection with her allegations, including claims under the CROA, 15 U.S.C. § 1679 et seq. (Count 1); § 8-208 of Maryland's Real Property ("RP") Article (Count 2); the MCPA, Md. Code Ann., Comm. L. ("CL") § 13-301 et seq. (Count 3); and the MCSBA, Md. Code Ann., CL § 14-1901, et seq. (Count 4). ECF 9, at 12–17. Plaintiff also brings a count requesting declaratory and injunctive relief (Count 5). *Id.* at 17. Plaintiff filed the complaint in the Circuit Court for Baltimore City on September 26, 2025. ECF 1, at 2. Defendants jointly removed the case to this Court on November 5, 2025, pursuant to federal question jurisdiction and the Class Action Fairness Act, 28 U.S.C. §§ 1332(d), 1453. *Id.* at 2. WP&M filed its motion to dismiss, ECF 16, and Homebody filed its motion to compel arbitration, ECF 17, on December 12, 2025. Those motions are ripe for disposition.

4

## II.   HOMEBODY'S MOTION TO COMPEL ARBITRATION (ECF 17)

### A.   Legal Standard

"[M]otions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013) (quoting *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683 (D. Md. 2004)). "If the Court need not refer to evidence beyond the pleadings and documents integral to the pleadings, then the Court should analyze such a motion under the standard for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Egahi v. WorldRemit Corp.*, Civ. No. JKB-24-03728, 2026 WL 73776, at *2 (D. Md. Jan. 9, 2026). But "[w]here, as here, the formation or validity of the arbitration agreement is in dispute, a motion to compel arbitration is treated as one for summary judgment." *Caire*, 982 F. Supp 2d. at 589 (citing *Shaffer*, 321 F. Supp. 2d at 684 n.1); *see also Cherdak v. ACT, Inc.*, 437 F. Supp. 3d 442, 454 (D. Md. 2020) (holding that "[t]reating a motion to compel arbitration as a motion for summary judgment is proper where the formation or validity of the arbitration agreement is in dispute . . . or where documents outside the pleadings must be considered" (internal citations omitted)).

Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* When considering a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in that party's favor. *Id.* at 255 (citation omitted). However, the Court

5

may rely only on facts supported in the record. *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The Court may not rely upon unsubstantiated assertions in the pleadings. *Id.*

### B.    Analysis

Homebody moves to compel arbitration, and stay this putative class action, on the ground that "Plaintiff executed an agreement for Homebody's rent-reporting services that included a binding and enforceable arbitration provision" covering "any and all disputes arising out of Homebody's services." ECF 17, at 1. Plaintiff counters that she did not assent to arbitration, and that the arbitration provision is procedurally unconscionable and illusory. ECF 20, at 5, 7.

Under Section 2 of the Federal Arbitration Act ("FAA"), an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. While Section 2 has been interpreted as "a congressional declaration of a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), the Supreme Court has been careful to clarify that "arbitration agreements [are] as enforceable as other contracts, but not more so," *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).

The FAA permits a party to an arbitration agreement to seek to compel another party to submit claims to arbitration. *See* 9 U.S.C. § 4. In this regard, Section 4 of the FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . [a] district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* The statute also provides that, when presented with such a petition, the Court "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order

6

directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* But, if the "making of the arbitration agreement" is at issue, "the [C]ourt shall proceed summarily to the trial thereof." *Id.*

In the Fourth Circuit, a litigant can compel arbitration under the FAA if the litigant can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [party avoiding arbitration] to arbitrate the dispute." *See Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002). The question of "[w]hether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Levin v. Alms and Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (alteration in original) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 92 (4th Cir. 1996)). "[W]here the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010); *see also Berkeley Cty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019) (stating that Section 4 of the FAA "requires that the district court—rather than an arbitrator—decide whether the parties have formed an agreement to arbitrate"). But "[a] district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Adkins*, 303 F.3d at 500 (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)).

Plaintiff contests the existence of a binding contract to arbitrate this dispute. Homebody, as the party seeking to enforce the arbitration agreement, "bears the burden of establishing the existence of a binding contract to arbitrate." *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211,

7

217 (4th Cir. 2024) (citations omitted). Homebody argues that a valid contract was formed because "Plaintiff was given reasonable notice of the Terms, including the binding arbitration provision," and "manifested unambiguous consent to those Terms when she executed the Homebody Addendum and again each time she paid for those services in monthly invoices[.]" ECF 17-1, at 11. Homebody also contends that "whether [Plaintiff] actually accessed the June 2024 Terms online or read them is irrelevant." *Id.* "Whether an agreement to arbitrate was formed is . . . a question of ordinary state contract law principles." *Marshall*, 112 F.4th at 218 (citation omitted). In Maryland,[3] an agreement to arbitrate disputes is enforceable only if it is a properly formed contract. *See Noohi v. Toll Bros., Inc.,* 708 F.3d 599, 603–04, 607 (4th Cir. 2013) (citing *Cheek v. United Healthcare of the Mid-Atl., Inc.*, 835 A.2d 656, 661 (Md. 2003)). "Under Maryland law, 'the formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration.'" *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 777 (4th Cir. 2013) (quoting *CTI/DC, Inc. v. Selective Ins. Co.*, 392 F.3d 114, 123 (4th Cir. 2004)).

As an initial matter, the Court clarifies what evidence is being considered to resolve the motion to compel. Plaintiff argues that the motion to compel arbitration must be denied because Homebody has failed to "prove what terms were incorporated at the moment of alleged assent." ECF 20, at 5 ("Homebody has not produced competent, dated evidence establishing that this arbitration language was posted and accessible at the referenced URL on November 7, 2024 . . . . Without proof of the specific arbitration terms allegedly incorporated and assented to, Homebody

---

[3] Defendant applies Maryland law in its motion to compel arbitration based on the applicable contract terms, *see* ECF 17-1, at 8 n.3, and Plaintiff does not dispute that Maryland contract law applies. "Maryland adheres to the doctrine of *lexi loci contractus*, which provides that 'the law of the jurisdiction where the contract was made controls its validity and construction.'" *Phila. Indem. Ins. Co. v. Markel Ins. Co.*, 649 F. Supp. 3d 84, 94 (D. Md. 2023) (citing *Kramer v. Bally's Park Place, Inc.*, 535 A.2d 466 (Md. 1988)). Plaintiff entered into the contract in Maryland, *see* ECF 9, at 2, so the Court will apply Maryland law to this arbitration dispute.

8

cannot meet its burden to compel arbitration."). Homebody has produced a copy of the Homebody Terms, dated June 21, 2024, *see* ECF 17-3, at 2, and a sworn affidavit from Jamis Gardner, Homebody's Chief Legal Counsel, affirming that those Terms are a true and correct copy of what was "posted to the Homebody website" and in effect during the relevant time period, ECF 17-2, at 2 ¶ 4. Homebody has also produced "a true and correct copy of Ms. Heffner's Lease Agreement that includes the Homebody Rent Reporting Lease Addendum executed electronically by Ms. Heffner." ECF 17-2, at 2 ¶ 6. Plaintiff provides no reason, beyond conjecture, why this evidence is not "competent" or why this Court should not rely on it. Indeed, in the next breath, Plaintiff asserts that her own affidavit submitted with her opposition qualifies as "sworn evidence." ECF 20, at 6. For purposes of deciding a motion to compel arbitration, the Court may properly consider documents outside of the pleadings. *Berkely Cnty. Sch. Dist.*, 944 F.3d at 234. Because Plaintiff has not provided any persuasive reason why the evidence provided by Homebody should not be relied on, the Court will consider it to resolve the merits of the motion.

In opposition to the motion to compel, Plaintiff makes a number of assertions rarely accompanied by supporting caselaw. The most relevant argument, and indeed the one the resolution of this motion turns on, is Plaintiff's assertion that there exists a "risk of illusory obligation." ECF 20, at 7. Specifically, Plaintiff contends that because the Homebody Terms "contemplate modification from 'time to time' and treat continued enrollment as acceptance of changes," there exist "illusory modification concerns." *Id.* (capitalization and emphasis modified). Illusory promises go to the element of consideration. "Maryland law dictates that an arbitration provision is a severable contract that must be supported by adequate consideration beyond the consideration that supports the overall contract." *Trimble v. Entrata, Inc.*, 791 F. Supp. 3d 615, 626 (D. Md. 2025) (internal quotation marks omitted) (quoting *Ford v. Genesis Fin. Sols., Inc.*,

9

726 F. Supp. 3d 441, 450 (D. Md. 2024), *aff'd*, No. 24-1341, 2025 WL 1540933 (4th Cir. May 30, 2025)). "[C]onsideration may be established by showing a benefit to the promisor or a detriment to the promisee." *Cheek*, 835 A.2d at 661 (citation modified). "In the context of arbitration agreements, each party's consideration is their promise of 'the forebearance [sic] to exercise a right or pursue a claim,' namely, the right to bring suit in a court of law." *Egahi*, 2026 WL 73776, at *4 (alteration in *Egahi*) (quoting *Cheek*, 835 A.3d at 661). "If a promise does not actually bind the promisor to fulfill any obligation, then it is illusory and cannot serve as consideration." *Id.* (citing *Cheek*, 835 A.3d at 662).

"Under Maryland law, a promise to arbitrate is illusory—and thus cannot constitute the consideration necessary to support a binding contract—if the [modifying party] reserves the right 'to alter, amend, modify, or revoke the Arbitration Policy . . . at any time with or without notice.'" *Coady v. Nationwide Motor Sales Corp.*, 32 F.4th 288, 292 (4th Cir. 2022) (quoting *Cheek*, 835 A.2d at 662). "The Fourth Circuit has suggested that adequate limitations exist where a contract requires the modifying party to provide sufficient notice of modifications *and* the opportunity to reject those modifications before they become binding." *Trimble*, 791 F. Supp. 3d at 627 (emphasis in original) (citing *Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 180–81 (4th Cir. 2025)). "For example, a 'contract that mandates advance, detailed notice,' of any changes does not render illusory a mutual promise to arbitrate because the notice requirement 'constrains the modifying party by giving the other side a chance to end the contract before the change takes effect.'" *Id.* (quoting *Johnson*, 131 F.4th at 181); *see also Holloman v. Circuit City Stores, Inc.*, 894 A.2d 547, 554 (Md. 2006). "Notably, the Fourth Circuit has concluded that providing notice by posting an updated version of the [relevant] agreement on [a modifying party's] website is not sufficient to preserve consideration because it places no constraint on [the modifying party's]

10

ability to escape its contractual obligations whenever it sees fit." *Trimble*, 791 F. Supp. 3d at 627

(quoting *Johnson*, 131 F.4th at 180).

> Here, the Homebody Terms include a modification provision, which states:

> Homebody reserves the right to change or modify any of the Terms contained herein . . . at any time and in its sole discretion. Any changes or modifications will be effective immediately upon posting of the revisions on the Site. User's continued use of the Site following the posting of such changes or modifications will constitute acceptance of such changes or modifications.

ECF 17-3, at 2.

The modification provision applies to the arbitration provision at issue. As the Fourth

Circuit recently noted, "where a broader contract contains a modification provision applicable to

all contract terms, courts construe that clause to apply to an arbitration provision contained in the

same contract document." *Trimble*, 791 F. Supp. 3d at 627 (citing *Johnson*, 131 F. 4th at 179–80).

The modification provision refers broadly to Homebody's "right to change or modify *any of the*

*terms contained herein.*" ECF 17-3, at 2 (emphasis added). Neither this provision nor the

arbitration language exempts the arbitration clause from the modification provision's ambit.

Therefore, this modification provision applies to the entire terms and conditions, and Homebody

purportedly retained the right to modify the arbitration clause "at any time and in its sole

discretion." ECF 17-3, at 2; *cf. Trimble*, 791 F. Supp. 3d at 627–28.

Moreover, the express language of the modification provision does not provide for any

advance notice before Homebody could unilaterally change any of the terms. Instead, the

modification provision provides for post-hoc notice, requiring Homebody only to post the changed

terms on their website *after* making the change. *See Egahi*, 2026 WL 73776, at *4 ("[T]here is no

limit on Defendant's discretion to modify, or revoke, the arbitration agreement's terms at its

pleasure. Defendant is only required to place the most current version of the User Agreement on

11

its website *after the terms have already been changed.*" (emphasis in original)). "This type of after-the-fact, ineffectual notice . . . places no constraint on [Homebody's] ability to escape its contractual obligations whenever it sees fit." *Johnson*, 131 F.4th at 180 (alteration added). Accordingly, this modification clause rendered illusory any mutual promise acting as consideration for Homebody's terms and the arbitration clause therein. *Cf. Trimble*, 791 F. Supp. 3d at 630; *Egahi*, 2026 WL 73776, at *4; *Coady*, 32 F.4th at 293.

Homebody argues that the agreement was not illusory because "the terms of the arbitration provision did not change at all from the time Ms. Heffner executed the Homebody Addendum until she terminated the services." ECF 23, at 7. This argument does not compel a different result. In *Cheek*, the Supreme Court of Maryland found an arbitration provision illusory based on a modification clause, even when the defendant had "not revoked nor in any way altered the Arbitration Policy with [the plaintiff] at any time." *Cheek*, 835 A.2d at 662. So too here. It is Homebody's ability to modify the Homebody Terms, and therefore the arbitration clause, at its sole discretion without any notice or consent that renders its promise illusory—not whether it has done so. Homebody has not pointed to any other consideration that would support a finding that an enforceable contract was formed. *Cf. Raley v. Whitestake Improvements LLC*, 625 F. Supp. 3d 457, 465 (D. Md. 2022) ("Because the defendants retained the ability to modify the arbitration clause at their sole discretion, their promise to arbitrate was illusory, and without a mutual exchange of promises to arbitrate, no consideration supported the arbitration provision. . . . Raley did not enter into an agreement to arbitrate, and he cannot be forced to submit any dispute to arbitration that he has not agreed to submit." (citation modified)). Accordingly, Homebody's motion to compel arbitration is DENIED.

12

### III. WP&M'S MOTION TO DISMISS (ECF 16)

#### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

#### B. Analysis

WP&M moves to dismiss each of the claims brought against it. ECF 16-1, at 8. For the purpose of resolving the motion to dismiss, the Court relies only on the facts alleged in the complaint, accepted as true. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). The Court addresses the viability of each of Plaintiff's claims below.

13

### 1.   CROA (Count 1)

Plaintiff alleges that Defendants are credit repair organizations that have violated the CROA by failing to obtain "a written and dated contract with the terms and provisions required." *See* ECF 9, at 12; *see also id.* at 8 (alleging that Defendants "are credit repair organizations" because "they charge for a service whose implied purpose is to improve credit"). "The CROA is a federal statute that functions as a subset of the Consumer Credit Protection Act and is designed to promote transparency in consumer credit transactions." *Arriola v. Pardo*, No. 1:14CV0745 JFA, 2015 WL 3404725, at *4 (E.D. Va. May 26, 2015). "The CROA is designed to regulate individuals and/or entities that function as a 'credit repair organization.'" *Id.* The statute defines a credit repair organization, in relevant part, as "any person" who sells, provides, or performs "any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of . . . improving any consumer's credit record, credit history, or credit rating." 15 U.S.C. § 1679a(3)(A)(i).

A credit repair organization, or CRO, is prohibited from providing services "for any consumer . . . unless a written and dated contract (for the purchase of such services), which meets the requirements of subsection (b) has been signed by the consumer." *Id.* § 1679d(a)(1). Subsection (b) provides that any such contract must include, in writing, "the terms and conditions of payment," "a full and detailed description of the services to be performed by the credit repair organization for the consumer," "the credit repair organization's name and principal business address," and "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an

14

explanation of this right.'" *Id.* § 1679d(b). Individuals injured by a violation of the CROA are permitted to recover both actual and punitive damages. *See id.* § 1679g(a).

Here, WP&M argues that it cannot be held liable under the CROA because it is not a credit repair organization under the meaning of the statute and did not provide, or offer to provide, any credit repair services. ECF 16-1, at 10, 12. "[T]he activities of an organization, not what it calls itself, determines whether it will be held to be a credit repair organization under CROA." *Berry v. Cook Motor Cars, Ltd.*, Civ. No. AMD-09-426, 2009 WL 1971391, at *2 (D. Md. June 29, 2009) (quoting *In re Wright*, No. 05-40829JJR13, 2007 WL 1459475, at *10 (Bankr. N.D. Ala. May 16, 2007)); *see also Polacsek v. Debticated Consumer Counseling, Inc.*, 413 F. Supp. 2d 539, 546 (D. Md. 2005) (holding that the CROA applies to a credit counseling agency "where, as a substantial part of its activity" it "undertakes for pay to sell, provide or perform any service to improve a consumer's credit record, credit history, or credit rating"). "[W]here a person or entity acts in concert with or substantially in support of the services offered by a CRO, or such person or entity engages in substantially similar activities as a CRO (despite calling itself something else), then the statute will apply." *Berry*, 2009 WL 1971391, at *2.

The allegations of the complaint make clear that "Homebody provides the rent-reporting service" at issue, not WP&M. ECF 9, at 4. The screenshot of the lease addendum included in the complaint likewise provides that the rent reporting service is "a credit reporting and financial tool provided by Homebody." *Id.* at 5. Nevertheless, Plaintiff argues that her allegations that WP&M "presented the Addendum at lease signing," "represented the program as a property-provided amenity," and "caused tenants to incur monthly fees . . . support a reasonable inference that WP&M was . . . a functional seller/implementer of the program." ECF 21, at 4. However, even if the Court were to consider WP&M a "functional seller/implementer" of the rent reporting

program, the complaint lacks any allegations to suggest that WP&M was offering to sell any credit repair services for a fee to support liability under the CROA. *Cf. Berry*, 2009 WL 1971391, at *2 (finding "[n]o reasonable person would interpret" an advertisement that mentioned "restablish[ing] credit" "to mean that the defendant was offering to sell credit repair services or, for a fee, address a potential car-buying customer's preexisting credit problems"). The complaint alleges that the rent reporting service at issue "involved reporting tenants' 'rent and/or utility payments due under the Rental Agreement to one or more consumer reporting agencies[.]'" *Id.* Such an allegation does not reasonably support an inference that WP&M promised to provide any service that would improve Plaintiff's credit ratings, or that it held itself out as a CRO. *Cf. Polacsek*, 413 F. Supp. 2d at 458 (finding a credit counseling agency subject to the CROA where it "expressly promised that its services would 'IMPROVE CREDIT' (boldface in original) by 'reaging accounts' which would 'improve your credit rating'").

Plaintiff further argues that the CROA applies to WP&M because it "implemented and tendered a paid program framed as credit-related ('rent reporting' to major bureaus), presented as an 'amenity,' and imposed recurring fees after automatic enrollment." ECF 21, at 3. However, Plaintiff does not explain how merely raising such "credit-related" allegations supports an inference that WP&M sold, provided, or performed "any service . . . for the express or implied purpose of . . . improving any consumer's credit record, credit history, or credit rating." 15 U.S.C. § 1679a(3)(A)(i). Count 1 is therefore dismissed as to WP&M.

### 2.   Real Property § 8-208 (Count 2)

Plaintiff contends that WP&M violated Md. Code Ann., RP § 8-208 based on the lease addendum that "incorporates Homebody's terms" and "include[s] a lease provision that asks tenants to 'agree to waive or forego' their right to hold Defendants responsible in court." ECF 9, at 14. In other words, Plaintiff takes issue with the arbitration clause and class action waiver

16

contained in Homebody's terms and conditions. *Id.* at 6. RP § 8-208 prohibits a landlord from using "a lease or form of lease containing any provision that . . . [h]as the tenant agree to waive or to forego any right or remedy provided by applicable law." RP § 8-208(d)(2). "Any such provisions in a residential lease are unenforceable by the landlord." *Westminster Mgmt., LLC v. Smith*, 312 A.3d 741, 750 (Md. 2024). Section 8-208(g) "establishes a private cause of action for tenants harmed by a landlord's violation of the statute." *Smith v. Westminster Mgmt., LLC*, 290 A.3d 1161, 1176 (Md. App. 2023), *aff'd*, 312 A.3d 741 (Md. 2024). The statute provides: "[i]f the landlord includes in any lease a provision prohibited by this section . . . and tenders a lease containing such a provision or attempts to enforce or makes known to the tenant an intent to enforce any such provision, the tenant may recover any actual damages incurred as a reason thereof, including reasonable attorney's fees." RP § 8-208(g)(2). Thus, to prove a § 8-208 claim, Plaintiff "must show that the Lease contains a term proscribed by that statute and that actual damages were incurred as a reason of the inclusion of the proscribed term." *Durham v. Home Partners Holdings LLC*, Civ. No. LKG-23-03490, 2024 WL 4955279, at *14 (D. Md. Dec. 3, 2024).

WP&M argues that Plaintiff's claim under RP § 8-208 fails because the "arbitration and class action provisions about which Plaintiff complains are not in the Lease," and because Plaintiff fails to allege any actual damages resulting from the "supposedly offending provisions." ECF 16-1, at 13. The Court agrees with WP&M. The "legislative purpose underlying § 8-208 is to regulate leases for residential property in Maryland for the protection of tenants." *Westminster Mgmt.*, 312 A.3d at 765 (quoting RP § 8-208(g)(1)). "It does so by, among other things . . . rendering prohibited terms 'unenforceable *by the landlord.*'" *Id.* (emphasis added). Here, Plaintiff plainly alleges that the terms and conditions that contain the arbitration clause are a part of her contract

17

with and enforceable by Homebody, not WP&M, her landlord. ECF 9, at 6 (alleging that Homebody's terms and conditions include "a mandatory arbitration clause and class action waiver"); *see also id.* (screenshot of Homebody's website with the arbitration agreement). Contrary to Plaintiff's contention, the proffered facts do not show that there is any lease provision between Plaintiff (the tenant) and WP&M (the landlord) that "asks tenants to 'agree to waive or forego' their right to hold [WP&M] responsible in Court." ECF 9, at 14. Because the contract terms with which Plaintiff takes issue are neither a part of her residential lease nor enforceable by her landlord, Plaintiff's § 8-208 claim fails. *Cf. Kapneck 14-16, LLC v. Bkeezy's Speakeasy, LLC*, 356 A.3d 123, 132 (Md. 2026) (noting that RP § 8-208 "applies only to residential leases").

As Defendants correctly observe, the complaint also lacks allegations to show that the inclusion of the arbitration clause in Homebody's terms and conditions caused Plaintiff any actual damages. ECF 9, at 14 (claiming that Plaintiff is "entitled to recover the amount of any actual damages sustained . . . or the amounts paid . . . as Rent Reporting fees"). Plaintiff nevertheless counters that she has plausibly pled damages—namely, "enrollment and recurring charges" for the rent reporting program and that "Defendants are invoking those terms to restrict remedies in litigation." ECF 21, at 6. But the enrollment and charges for the rent reporting do not qualify as actual damages in this context, as they were not incurred "as a reason of the inclusion" or by enforcement of the arbitration clause by WP&M. *Durham*, 2024 WL 4955279, at *14. As Plaintiff makes clear in her complaint, the enrollment fee would have been incurred regardless of any of Homebody's terms and conditions because she was automatically enrolled in the program by signing the lease addendum. ECF 9, at 5. The monthly fee was incurred because Plaintiff failed to cancel or opt out of the program. *Id.* ("After signing the Apartment Lease, Ms. Heffner incurred

18

and paid the monthly $8.95 fee."). Neither are tied to or result from the inclusion of the arbitration or waiver clauses. Accordingly, Plaintiff's § 8-208 claim against WP&M fails.[4]

### 3.    MCPA (Count 3)

Plaintiff alleges that Defendants "misrepresented the nature and benefits of rent reporting," "used unfair and deceptive practices, including automatic enrollment, hidden web-based arbitration clauses, and misleading marketing," and "omitted information about being unlicensed . . . from tenants," in violation of the MCPA. ECF 9, at 15. Plaintiff also alleges that Defendants "engaged in unfair and deceptive trade practices by collecting and attempting to collect on monies which, in fact, were not legally due, [and] were not legally enforceable." *Id.*

Under the MCPA, any entity doing business in Maryland is prohibited from engaging in any "unfair, abusive, or deceptive trade practices," including making a "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers," representing that "consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have," or failing "to state a material fact if the failure deceives or tends to deceive." CL § 13-301(1)–(3). "To state a claim pursuant to the MCPA, the Plaintiffs must allege facts to show: (1) an unfair or deceptive practice or misrepresentation; (2) that is relied upon; and (3) causes them actual injury." *Durham*, 2024 WL 4955279, at *9 (citing *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012)). "This Court has held that '[a] consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice.'" *Id.* (quoting *Bryant v. Koppers, Inc.*, 627 F. Supp. 3d 466, 477 (D. Md. 2022), *aff'd*, No. 22-2017, 2023 WL 3053017 (4th Cir. Apr. 24, 2023)). The MCPA also

---

[4] WP&M also contends that RP § 8-208 is contrary to and preempted by the FAA. ECF 16-1, at 14. The Court need not reach this argument since the claim is dismissed on other grounds.

includes a private right of action, but it "is limited to recovery for 'injury or loss sustained.'" *Shadrin v. Hunter Warfield Inc.*, Civ. No. ELH-22-3228, 2023 WL 4664037, at \*24 (D. Md. July 19, 2023) (quoting CL § 13-408); *see also Galola v. Snyder*, 613 A.2d 983, 985 (Md. 1992) (holding that a tenant who rented a property that was not licensed as required by law needed to show actual damage or injury from the lack of the licensure).

WP&M argues that Plaintiff fails to allege the first element of her MCPA claim because she did not plead particularized facts as required under Federal Rule of Civil Procedure 9(b). ECF 16-1, at 16.   Rule 9(b) requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  This involves describing "the who, what, when, where, and how of the alleged fraud." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citation modified).  "Claims that sound in fraud under the MCPA are subject to the heightened pleading requirements of Rule 9(b)." *Davis v. Screening Reps., Inc.*, Civ. No. BAH-25-1785, 2025 WL 3551846, at \*6 n.7 (D. Md. Dec. 11, 2025) (citing *Haley v. Corcoran*, 659 F. Supp. 2d 714, 724 n.10 (D. Md. 2009)).  "However, a party can allege an unfair and deceptive trade practice under sections other than § 13-301(9) of the MCPA without replicating a claim for common-law fraud and implicating the heightened pleading requirements of Rule 9(b)." *Id.* (internal quotation marks omitted) (quoting *Bryant*, 627 F. Supp. 3d at 478). For example, the Appellate Court of Maryland has held that a plaintiff need not plead with particularity for claims grounded in § 13-301(1) and (3)—two subsections Plaintiff invokes for her MCPA claim (along with § 13-301(2)). ECF 9, at 15; *see also McCormick v. Medtronic, Inc.*, 101 A.3d 467, 493–94 (Md. App. 2014).  And Plaintiff argues that she *has* pled her MCPA claim with particularity by identifying "where and when the alleged deceptive conduct occurred." ECF 21,

20

at 7. Regardless, the Court need not delve further into this issue, as it concludes that Plaintiff's MCPA claim fails because she fails to allege her reliance on any alleged misrepresentation.

An MCPA claim "must plausibly aver that the defendant engaged in an unfair or deceptive practice or misrepresentation *on which the plaintiff relied*, and which caused actual injury" in order to survive dismissal. *Innovations Surgery Ctr., P.C. v. United Healthcare Ins. Co.*, 722 F. Supp. 3d 582, 594 (D. Md. 2024) (emphasis added) (citing *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 270 (D. Md. 2015)). In other words, Plaintiff must allege facts to show that a "misrepresentation substantially induce[d her] choice" to do something. *Bank of Am., N.A. v. Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d 505, 532 (D. Md. 2011). Although Plaintiff states in a conclusory fashion that Defendants "omitted information about being unlicensed under both federal and state law from tenants," and alleges that tenants "relied on these misrepresentations," ECF 9, at 15, no other facts in the complaint show that Plaintiff was substantially induced to do anything by any purported misrepresentation by WP&M. For example, with respect to the alleged lack of licensure, Plaintiff does not allege that she would not have applied for the apartment had WP&M disclosed that it was not licensed as a credit services business. *Jill P. Mitchell Living Tr.*, 822 F. Supp. 2d at 535 ("[A] consumer relies on a material omission under the MCPA where it is substantially likely that the consumer would not have made the choice in question had the commercial entity disclosed the omitted information."). Likewise, although Plaintiff alleges that WP&M "touted the Homebody Rent Reporting service as 'an amenity provided by the property for which all Residents are automatically enrolled,'" she does not allege any facts to show she relied on this statement in any way or that she would not have entered into the lease if not for said representation. *See* ECF 9, at 5. Plaintiff's MCPA claim against WP&M thus fails, and the Court need not reach the issue of whether Plaintiff has plausibly alleged injury or loss.

21

### 4.    MCSBA (Count 4)

Plaintiff alleges that WP&M violated the MCSBA by failing to "register [with the Commissioner of Financial Regulation] as required," "provide the written disclosures mandated by § 14-1905," and "use a separate written contract meeting the requirements of § 14-1906." ECF 9, at 16.  Plaintiff also claims that WP&M violated § 14-1914 "[b]y embedding an arbitration clause and class waiver in the Terms and conditions," rendering those provisions "expressly void." *Id.* at 17.

"The MCSBA applies to any contract with a Maryland resident involving credit services." *Comm'r of Fin. Regul. v. Brown, Brown, & Brown, P.C.*, 144 A.3d 666, 670 (Md. 2016) (citing CL § 14-1903(a)). "Its enactment was the result of the legislature's concern about the 'predatory practices and misleading advertising' of businesses that 'take fees from consumers to improve or extend credit, or to give advice or assistance in such matters,' and the MCSBA was enacted to 'target' such businesses." *Maryland Comm'r of Fin. Regul. v. CashCall, Inc.*, 124 A.3d 670, 678–79 (Md. App. 2015), *aff'd*, 139 A.3d 990 (Md. 2016).  "The MCSBA requires a 'credit services business' to, among other things, secure a license from the Commissioner, Com. Law § 14-1903(b); maintain a surety bond, Com. Law §§ 14-1908–1909; and provide an interested Maryland consumer with a written information statement, Com. Law §§ 14-1904–1905, which describes the duties and obligations of the credit services business (such as the obligation to provide a complete and detailed description of the services to be performed by the credit services business and the total amount the consumer will have to pay for those services) and the rights of the Maryland consumer (such as the right to file a complaint with the Commissioner against a credit services business)." *Id.* at 676. "It further requires that any contract such a business enters into with a consumer include a statement that the consumer has the right to 'cancel th[e] contract at any time

22

prior to midnight of the third business day after the date of the transaction.'" *Id.* (quoting CL § 14–1906).

"The MCSBA defines a 'credit services business' as 'any person who, with respect to the extension of credit by others, sells, provides, or performs, or represents that such person can or will sell, provide, or perform' any of certain enumerated services 'in return for the payment of money or other valuable consideration.'" *Brown, Brown, & Brown, P.C.*, 144 A.3d at 670 (emphasis omitted) (quoting CL § 14–1901(e)(1)). "The enumerated services that qualify a person as a 'credit services business' are: '(i) Improving a consumer's credit record, history, or rating or establishing a new credit file or record; (ii) Obtaining an extension of credit for a consumer; or (iii) Providing advice or assistance to a consumer with regard to either [of the first two services].'" *Id.* (emphasis omitted) (quoting CL § 14–1901(e)(1)). "One who negligently fails to comply with the statute is liable for any actual damages sustained by consumers, as well as attorney's fees and the costs of the proceeding." *Id.* at 671 (citing CL § 14–1912(b)). "One who 'willfully' violates the MCSBA is liable for any actual damages suffered by the consumer, a monetary award of treble damages of the total amount collected from the consumer, as ordered by the Commissioner, and any punitive damages that a court awards, as well as costs and attorney's fees." *Id.* (quoting CL § 14–1912(a)).

Here, Plaintiff's MCSBA claim against WP&M falls short because she fails to plausibly allege that WP&M is a credit services business under the MCSBA. Plaintiff asserts that "Defendants acted as 'credit services businesses' . . . by selling, providing, and representing that they could improve tenants' credit records, histories, or scores through 'rent reporting.'" ECF 9, at 16. However, the facts alleged in the complaint do not support such a characterization with respect to WP&M. Plaintiff alleges only that WP&M "explained the service involved reporting

tenants' 'rent and/or utility payments due under the Rental Agreement to one or more consumer reporting agencies'" and "touted the . . . service as 'an amenity provided by the property for which all Residents are automatically enrolled.'" *Id.* at 5. None of these facts show that WP&M represented that it would improve credit history, obtain an extension of credit, or provide any credit advice or assistance for Plaintiff. *See* CL § 14–1901(e)(1). Thus, the allegations in the complaint do not support Plaintiff's contention WP&M was acting as a credit services business under the meaning of the statute. And although Plaintiff alleges that "Defendants sell the [rent reporting] program as a way to 'build credit,'" it is clear from the screenshot of Homebody's website included in the complaint that it is Homebody, not WP&M, that advances the rent reporting program as a way to build credit. ECF 9, at 7 (including a screenshot of Homebody's website including five steps: "Sign up," "Pay your rent," "Payments are reported," "*Build your credit*," and "Financial opportunities") (emphasis added). No other facts in the complaint show that *WP&M* was acting as a credit services business.

Plaintiff also fails to allege any actual injury resulting from the alleged MCSBA violation. Instead, she claims she is "entitled to actual damages," ECF 9, at 17, and hypothesizes that "thousands of tenants pay fees every month for a supposed benefit [of building credit] that may never materialize," and that "[n]egative rental information can and does depress credit scores, making access to future housing and credit more difficult," *id.* at 7–8; *cf. Cabeza v. Richey L. & Assocs.*, Civ. No. WDQ-13-3511, 2014 WL 4635381, at *5 (D. Md. Sept. 16, 2014) (noting that "damage to credit and lost mitigation opportunities" are recoverable damages under the MCSBA). However, Plaintiff does not allege that she fell victim to depressed credit scores or difficulty accessing future housing or credit. As Plaintiff fails to allege that WP&M acted as a credit services business or that she sustained any injury or loss, this claim must also be dismissed as to WP&M.

24

### 5.    Declaratory and Injunctive Relief (Count 5)

Given that all claims against WP&M have been dismissed, Plaintiff cannot assert a separate claim for declaratory and injunctive relief against it. *See Manago v. Cane Bay Partners VI, LLLP*, Civ. No. LKG-20-0945, 2022 WL 4017299, at *9 (D. Md. Sept. 2, 2022) (dismissing a claim for declaratory and injunctive relief, after dismissing all other claims, "because such relief does not constitute an independent claim"); *see also Univ. Gardens Apartments Joint Venture v. Johnson*, 419 F. Supp. 2d 733, 742 (D. Md. 2006) (noting that declaratory and injunctive relief are not claims, but "available forms of relief, should the court otherwise have a valid cause of action before it"). Accordingly, Count 5 will also be dismissed as to WP&M, and WP&M will be dismissed as a defendant in this action.

### C.    Leave to Amend

Recognizing that this Court's Local Rules require "a proposed amended pleading accompany a motion for leave to amend," Plaintiff "requests that the Court grant leave to file a motion for leave to amend consistent with Local Rule 103.6." ECF 21, at 11. WP&M opposes amendment and argues that Plaintiff has failed to properly file a motion to amend and that amendment would be futile. ECF 22, at 6. While it is true that "[o]rdinarily, requesting leave to amend in a response in opposition to a motion to dismiss does not constitute a proper motion for leave to amend," *Davis*, 2025 WL 3551846, at *6 (citing *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008)), it appears that WP&M misunderstands Plaintiff's request. Plaintiff does not request leave to file an amended complaint sight unseen but rather requests leave to file a *motion* for leave to amend her complaint, along with a proposed amended complaint. ECF 21, at 10–11.

The Court notes that a party is generally not required to request leave to file a motion for leave to amend. *See* Loc. R. 103.6(a) (D. Md. 2025) ("Whenever a party files a motion requesting

25

leave to file an amended pleading, the original of the proposed amended pleading shall accompany the motion."). Moreover, despite WP&M's urging, the Court is not prepared to evaluate whether amendment would be futile or would cure any deficiencies in the original complaint without first seeing a proposed amended complaint and reviewing fulsome briefing on the issue. *Cf. Green v. iMentor, Inc.*, Civ. No. RDB-24-2567, 2025 WL 3077594, at *7 (D. Md. Nov. 4, 2025) (noting that absent a motion or a proposed amended complaint, the court could not "determine whether the amendment would cure the defects in the initial complaint" (citation modified)). The Court will therefore grant Plaintiff leave to file a motion for leave to amend, which should comply with Local Rule 103.6, within twenty-one (21) days of the issuance of this memorandum opinion and accompanying order. The Court notes that granting this request has no bearing on whether Plaintiff will ultimately be permitted to file an amended complaint.

## IV.  **CONCLUSION**

For the foregoing reasons, Homebody's motion to compel arbitration is DENIED, and WP&M's motion to dismiss is GRANTED. Homebody is directed to file an answer to the complaint within fourteen (14) days of the issuance of this memorandum opinion and accompanying order. Plaintiff may file a motion for leave to file an amended complaint within twenty-one (21) days of the issuance of this memorandum opinion and accompanying order.

A separate implementing order will issue.

Dated: July 13, 2026

/s/
Brendan A. Hurson
United States District Judge
